In re KRAMER et al.

(District Court, E. D. Pennsylvania. February 6, 1914.)

No. 4344.

1. BANKRUPTCY (§ 136*) — CONCEALMENT OF PROPERTY — ORDER TO DISMISS — CONTEMPT PROCEEDINGS.

Where bankrupts were ordered to pay over money alleged to have been withheld from the trustee, and, in proceedings to adjudge them guilty of contempt in failing to comply with the order, they both testified that they did not have possession or control of the money and were unable to comply with the order, the court was authorized to examine the testimony taken before the referee in order to determine whether the bankrupts' denial was false and fraudulent.

[Ed. Note.—For other cases, see Bankrup\.., , Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

2. BANKRUPTCY (§ 136*) — CONCEALMENT OF ASSETS — FAILURE TO PAY — CONTEMPT.

Where bankrupts were ordered to pay over certain withheld funds to the trustee, and their testimony before the referee was a network of inconstancies, evasions, and deliberate falsehoods, their subsequent denial that they had possession of the money which they had abstracted from the bankrupts' estate, and were therefore unable to comply with the order, was insufficient to relieve them from punishment for contempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Harry Kramer and Michael Muchnick. Rule to attach the bankrupts for contempt in failing to pay over to the trustee certain funds alleged to have been retained by them and which they were ordered to pay over. Rule absolute. See, also, 209 Fed. 627.

Carr, Beggs '& Steinmetz and Alfred T. Steinmetz, all of Philadelphia, Pa., for trustee.

Furth, Singer & Bortin and Emanuel Furth, all of Philadelphia, Pa., for bankrupts.

THOMPSON, District Judge. By the finding and order of the referee, as modified and affirmed by the learned Circuit Judge, it has been authoritatively determined that at the time of bankruptcy the partners, Harry Kramer and Michael Muchnick, bankrupts, were in possession and control of the sum of $4,092.21, and that Michael Muchnick, individually, was in possession and control of the further sum of $16,732.94, which should have been paid to the trustee. ,

As stated by Judge Young in the case of Epstein v. Steinfeld,. 210

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

210 F.—62

Fed. 236, decided in the Circuit Court of Appeals for the Third Circuit January 2, 1914:

"This is the first stage of the proceeding. The second stage is to determine whether or not the property required is still in the possession or control of the bankrupt and that he is physically able to deliver it to his trustee. The correct practice at this stage of the proceedings has been authoritatively stated by Judge Gray in American Trust Co. v. Wallis, 126 Fed. 464 [61 C. C. A. 342], in the following language: 'If the bankrupt denies that he has possession or control of the property, or if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal on the part of the bankrupt or the one in possession to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt, for the enforcement of its order. In the absence of fraud or concealment, the bankrupt court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver up, having the same in his possession or control. If it shall appear that he is not physically able to deliver the property required by the order, then confessedly proceedings for contempt, by fine and imprisonment, would result in nothing, certainly not in a compliance with the order. The contempt in this case could only be purged by a reiteration of the physical impossibility to comply with the order whose disobedience is being thus punished. An order made under such circumstances would be as absurd as it is inconsistent with the principles of individual liberty.' "

[1] At the hearing on the present rule, both bankrupts went upon the stand and denied that they had possession or control of the money which they were ordered to pay to the trustee. If therefore there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal upon the part of the bankrupts to deliver up the property as ordered, the proceedings for contempt for the enforcement of the order should be dismissed. The primary fact of possession by the bankrupts at the time of bankruptcy having been established, their testimony at the hearing upon the present rule constituted merely a flat denial that they had within their possession or control the money or that any other person held it for them. Both of the bankrupts testified as to their present employment, their manner of living, and the amount expended by them for living expenses since the bankruptcy with the apparent purpose of proving that they were not spending beyond their present earnings. In order to assist in determining, therefore, whether it is indisputably shown that their denial or claim is false and fraudulent, the testimony taken before the referee has been examined and considered. The conclusion from that testimony is irresistible that the bankrupts, for a period of several months prior to bankruptcy by a deliberately arranged plan continuously carried out, withdrew from the partnership funds, for the purpose of fraud upon creditors, various sums amounting in the total to the sums which they had been ordered to pay to the trustee.

[2] A careful examination of the testimony of the two bankrupts taken before the referee shows numerous inconstancies, evasions, and deliberate falsehood in their explanation of the purposes for which the money was withdrawn and of the disposition made of it. The

more the bankrupts attempted to explain the depletion of the firm's assets, the more hopelessly they convicted themselves of intentional falsehood. Under these circumstances their present naked denial that they now have in their possession or control the funds abstracted is unworthy of belief.

At the hearing counsel for the bankrupts took the position that, in view of the conclusiveness of the former order, the bankrupts should not now be called upon to further explain their disposition of the money, as the court could not at this stage of the proceeding consider the testimony taken before the referee, and therefore the only evidence for consideration at this time consisted in the fact of failure to obey the order and the testimony of the bankrupts in denial of present ability to pay. In other words, the first stage of the proceedings being completed, all testimony in relation to the matter in controversy must be produced de novo.

I cannot conceive that the rule laid down in Trust Co. v. Wallis, 126 Fed. 464, 61 C. C. A. 342, and the practice outlined in Epstein v. Steinfeld, can be distorted so as to shut out the testimony upon which the former order was based, and the record upon which the present rule was allowed. That testimony abundantly proves not only fraud and concealment, but is so strongly conclusive of perjury as to induce entire disbelief in the present denial of the bankrupts of their being in possession or control of the money ordered to be paid.

I am convinced therefore that the testimony of the bankrupts at the present hearing is false, and that the testimony taken before the referee is "evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment" on the part of the bankrupts. As it has been determined that the bankrupts were withholding and concealing the money at the time of their bankruptcy, the testimony as to their earnings and expenses of living does not affect their present ability to pay. I am not satisfied of the fact of present inability to pay, and the order entered December 22, 1913, must therefore be enforced.

And now, February 6, 1914, the rule is made absolute, the bankrupts are adjudged in contempt for failure to obey the order of December 22, 1913, and the marshal is directed to take them into custody and commit them to the jail of Philadelphia county; the said Harry Kramer and Michael Muchnick there to remain until they pay to Alfred T. Steinmetz, trustee of their estate in bankruptcy, the sum of $4,092.21, and the said Michael Muchnick individually there to remain until he pays to the trustee the further sum of $16,732.94.